UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>JOHN LIVIGNI et al.,<br><br>Defendants. | 25cr484-3 (DLC)<br><br>OPINION AND ORDER |

APPEARANCES:

For the United States of America:

Adam Z. Margulies
Frank J. Balsamello
Lauren E. Phillips
Remy K. Grosbard
U.S. Attorney's Office for the Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

For defendant John Livigni:

Elena Fast
Michael S. Perkins
The Fast Law Firm, P.C.
521 Fifth Avenue, 17th Floor
New York, NY 10175

DENISE COTE, District Judge:

John Livigni, one of the nineteen defendants charged in Indictment S1-25 Cr. 484 (the "Indictment") with conspiring to distribute controlled substances in the vicinity of Washington Square Park, has moved to suppress certain evidence. For the following reasons, his motion is denied.

**Background**

The Indictment charges the defendants with conspiring between 2020 and 2025 to distribute fentanyl and other controlled substances in the Washington Square Park area in quantities that qualify for imposition of a ten-year mandatory minimum term of imprisonment. It also charges that the use of controlled substances distributed by the conspiracy resulted in the death of two victims and serious bodily injury to a third victim.

The Government contends that Livigni was the leader of the "Livigni Team," a group of co-conspirators who operated primarily on Sixth Avenue between West 8th and West 9th Streets in Manhattan before moving its principal base of operation two blocks north in 2025. According to the Indictment, Livigni had agreed with members of the "Bloods Team" to divide drug dealing territory, with the Bloods Team principally operating in Washington Square Park. The Teams shared sources of supply and low-level drug dealers, steered customers to available drug supply, and coordinated responses to law enforcement operations. As the alleged leader of the Livigni Team, Livigni oversaw the Team's operations, appointed and paid its managers, secured its drug supply, and served as the principal representative of the

Livigni Team in the mutual agreements and understandings that it had with other members of the conspiracy.

Livigni was arrested on October 30, 2025. He filed his motion to suppress evidence on June 18. The Government filed its opposition on July 2. Trial of up to six of the indicted defendants who have not entered pleas of guilty is scheduled to begin September 14, 2026. The Government will identify no later than August 14 which defendants it wishes to proceed against at the September 14 trial.

Livigni seeks to suppress evidence obtained from his cellphone. Specifically, Livigni challenges two warrants: first, an October 29, 2025 warrant for prospective cellphone location data used to facilitate his arrest (the "GPS Warrant"); and second, an October 31 warrant to search a premises identified as his residence for electronic storage devices (the "Premises Warrant"). Although Livigni's cellphone was apparently tossed out of a building and abandoned before it was seized, it was later searched pursuant to an omnibus search warrant, dated November 18, on which the Government relied to search seventeen cellphones seized during arrests and/or search warrant executions conducted between October 29 and November 5 (the "Omnibus Warrant").

## Discussion

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "Probable cause 'is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules.'" United States v. Thomas, 788 F.3d 345, 349 (2d Cir. 2015) (quoting Maryland v. Pringle, 540 U.S. 366, 370-71 (2003)). When evaluating whether probable cause exists in a case, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Raymonda, 780 F.3d 105, 113 (2d Cir. 2015) (citation omitted).

To suppress evidence based on a defective affidavit, "the defendant must demonstrate, by a preponderance of the evidence, that there were intentional and material misstatements or omissions in the search warrant affidavit." United States v. Klump, 536 F.3d 113, 119 (2d Cir. 2008). An omission is material if it is "necessary to the issuing judge's probable

cause finding." Id. (citation omitted). Although the law "does not demand that an officer applying for a warrant volunteer every fact that arguably cuts against the existence of probable cause, he must not omit circumstances that are critical to its evaluation." McColley v. Cnty. of Rensselaer, 740 F.3d 817, 823 (2d Cir. 2014) (citation omitted). Thus, "the ultimate inquiry is whether, after . . . correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." Thomas, 788 F.3d at 350 (citation omitted).

It is assumed for purposes of this Opinion that Livigni has standing to challenge the search of his cellphone, which he seeks to do through attacking the GPS and Premises Warrants. It is also assumed, without deciding, that it would be necessary to find that probable cause existed for each of these searches in order to lawfully search the phone.

The phone was searched pursuant to the Omnibus Warrant, which authorized the search of the cellphone seized during the execution of the Premises Warrant, but Livigni makes no developed argument regarding the inadequacy of that warrant. Accordingly, the GPS and Premises Warrants and the probable cause to support them are discussed below.

A. The GPS Warrant

This Court issued the GPS Warrant on October 29, 2025 to obtain prospective location data for four cellphones, including one with the last four digits -5693 (the "-5693 Phone"), based on an affidavit from Anthony Assent, an NYPD Detective and DEA Task Force Officer, of the same date. Detective Assent's affidavit identified Livigni and three others as among defendants who had just been indicted. The GPS Warrant sought prospective location data for cellphones the four men used in order to locate and arrest them.[1]

Livigni argues that the Assent affidavit failed to provide sufficient reason to connect the -5693 phone to Livigni. He is wrong.

[1] In 2018, the Supreme Court held that law enforcement's acquisition of historical cell phone location data for a period of 127 days constituted a Fourth Amendment search, and that "the Government must generally obtain a warrant supported by probable cause before acquiring such records" from a cellphone carrier. Carpenter v. United States, 585 U.S. 296, 316 (2018). In 2026, the Supreme Court held that the government's acquisition of historical cellphone location data from Google also implicated the Fourth Amendment. Chatrie v. United States, No. 25-112, slip op. at 2 (U.S. June 26, 2026). Carpenter and Chatrie are silent, however, on whether collection of real-time or prospective location data implicates the Fourth Amendment. See Carpenter, 585 U.S. at 316 (cautioning that the decision does "not express a view" on "real-time" cell site location data). The Second Circuit has not ruled on the issue. For purposes of this Opinion, the Court assumes that the GPS Warrant implicated the Fourth Amendment and that it must be supported by probable cause.

The Assent affidavit attached the Indictment issued on October 28, 2025, which named Livigni and the other three targets of the warrant as defendants. Detective Assent explained that the -5693 Phone was subscribed to "Jhani Jhani" and that John Livigni goes by the similarly sounding name Johnny. Co-defendant Manny Pina sells drugs on the Livigni Team, as described in the Indictment and the affidavit, and Pina's cellphone was in regular communication with the -5693 Phone, including after a road rage incident involving both men just weeks earlier on September 4, 2025.

Collectively, these facts established a "fair probability" that the -5693 Phone belonged to Livigni and that its location data would reveal his location. Raymonda, 780 F.3d at 113 (citation omitted). The GPS Warrant was therefore supported by probable cause.[2]

B. The Premises Warrant

Livigni was arrested on October 30, and on October 31, Magistrate Judge Taryn Merkl of the Eastern District of New York issued the Premises Warrant based on an affidavit from Detective Assent of that date. The warrant authorized a search of

[2] The defendant's request for a Franks hearing is denied. Livigni's argument relates to an error in a different warrant regarding a different defendant. The error was disclosed in the GPS Warrant.

Apartment 2A at 640 Bradford Street in Brooklyn (the "Premises") and seizure of electronic storage devices located there, among other things.

Livigni argues that the evidence seized pursuant to the Premises Warrant should be suppressed on two separate grounds.[3] First, as fruit of the GPS Warrant and second, because of two material omissions. The latter argument regarding the two omissions is addressed below.

Livigni acknowledges that the Assent affidavit disclosed both that Livigni had already been arrested and that someone besides Livigni appeared to have access to the -5693 Phone. But Livigni contends that the affidavit should have also disclosed that the phone had made 30 outgoing calls and sent six texts after Livigni's arrest on October 30. Instead, it only disclosed that the phone had made two outgoing calls at approximately 1:55 a.m. on October 31.

The Assent affidavit explains that Livigni had been indicted and attaches the Indictment as an exhibit. It also explains the bases to believe that Livigni used electronic devices to commit the crimes described in the Indictment, and repeats the evidence contained in the GPS Warrant linking

[3] To be clear, the phone was not seized inside the Premises but on the ground outside the building in which the Premises is located.

Livigni to the -5693 Phone. After explaining that evidence of narcotics trafficking is likely to be found on a defendant's cellphone, the affidavit described reasons to believe that Livigni's electronic devices may be found inside the Premises.

Detective Assent explained that when Livigni was arrested on October 30, he was two blocks from the Premises. Two domestic incident reports also linked Livigni to the Premises: a December 2022 domestic incident report that had been filed against Livigni listed the Premises as the location of the incident and, in March 2024, law enforcement went to the Premises in response to a domestic incident involving a person named Jaquelen Livigni.

The affidavit next explained that information provided by T-Mobile pursuant to the GPS Warrant indicated that "the Target Cellphone is presently in the Subject Premises." The affidavit attached the warrant and the application for that warrant. It also noted that someone else appears to have access to the -5693 Phone since two outgoing calls were made from it at about 1:55 a.m. on October 31, after Livigni had already been arrested.

Reading the affidavit and its attachments, the Premises Warrant provided probable cause to believe that the -5693 Phone may be found inside the Premises. It properly reported that someone other than Livigni was using the -5693 Phone after his

arrest, and the failure to provide an exhaustive list of all the calls and texts made during that period does not constitute a material omission.

The second omission on which Livigni relies in his motion to suppress concerns the location information for the phone. According to Livigni, the affidavit failed to acknowledge the "tenuous" evidence connecting the -5693 Phone to the Premises. Instead, it asserted only that the phone "is presently" in the Premises. This argument also fails.

Livigni acknowledges that his review of GPS data, which was apparently produced to him in discovery, indicates that at 2:10 a.m. and again between 1:40 p.m. and 2:00 p.m. on October 31, the phone was located near the Premises. Livigni emphasizes, however, that other GPS data from October 30 and 31 showed that, at other times, the phone was about two miles away or not transmitting any location data at all. Livigni argues that not mentioning that additional data was a material omission.

Livigni has not identified a material omission that renders the Assent Affidavit defective or undermines the finding of probable cause. The affidavit provided probable cause linking Livigni and the phone to the Premises -- a connection corroborated by the historical GPS records which, as Livigni's motion concedes, repeatedly place the phone in the immediate

vicinity of the Premises, among other places. Accordingly, Livigni's motion to suppress is denied.

## Conclusion

Livigni's June 18 motion to suppress is denied.

Dated: New York, New York
July 22, 2026

DENISE COTE
United States District Judge